**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ERIN DREYER,**

               **Plaintiff,**

v.                                                                          1:01-CV-155
                                                                            (NAM/RFT)

**NEW YORK STATE EXECUTIVE**
**DEPARTMENT, DIVISION OF VETERANS'**
**AFFAIRS, GEORGE BASHER,**
**and HARVEY McCAGG,**

               **Defendants.**

---

**APPEARANCES:**                                   **OF COUNSEL:**

Gleason, Dunn, Walsh & O'Shea                      Ronald G. Dunn
102 Hackett Boulevard
Albany, New York 12209
*For Plaintiff*

Office of the Attorney General                     Christopher W. Hall
State of New York                                  Assistant Attorney General
The Capitol
Albany, New York 12224
*For Defendants*

Norman A. Mordue, D.J.:

**MEMORANDUM-DECISION AND ORDER**

**I.    BACKGROUND**

      Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure in this employment discrimination action. In her complaint, filed on January 30,

2001,[1] plaintiff Erin Dreyer, who was appointed by the New York State Governor's office to the

---

[1] Plaintiff filed a complaint with the New York State Division of Human Rights and the
Equal Employment Opportunity Commission ("EEOC") on March 16, 2000, and

position of Executive Secretary to the Director of the Division of Veterans' Affairs on January 13, 1997, claims that her co-worker, defendant Harvey McCagg sexually harassed her. Plaintiff claims that, although she complained to defendant George Basher, the Director of Veterans' Affairs, nothing was done about the sexual harassment. Director Basher terminated plaintiff's employment on March 2, 2000. Plaintiff states that she was terminated because of her sex and because she was pregnant, and in retaliation for her complaints of sexual harassment.

The complaint sets forth five causes of action. The first cause of action alleges that the Division sexually discriminated against her and condoned sexual harassment in violation of 42 U.S.C. § 2000e ("Title VII"). The second cause of action alleges that the Division retaliated against her for complaining about sexual discrimination and harassment in violation of Title VII. The third cause of action alleges that the Division terminated plaintiff because she was a woman and pregnant in violation of Title VII. The fourth cause of action alleges that defendants Basher and McCagg sexually discriminated against and harassed plaintiff in violation of N.Y. Exec. L. § 296 ("Human Rights Law" or "HRL"). The fifth cause of action alleges that defendants Basher and McCagg retaliated against plaintiff for her complaints about sexual discrimination and harassment in violation of the HRL.

## II.     FACTS

As discussed below, it is apparent from the evidence the parties submitted in support of and in opposition to the instant motion that many of the pertinent facts in this case are in dispute. The facts as they relate to plaintiff's employment at the Division are many and

---

received a right to sue letter dated November 2, 2000 from the EEOC, and a dismissal on the basis of administrative convenience from the New York State Division of Human Rights dated November 13, 2000.

complicated. The following is a summary of the evidence relevant to the disposition of this motion, presented in the light most favorable to plaintiff. As a result of her connections to the Saratoga County Republican Party, the Division hired plaintiff in 1997 to serve as the Executive Secretary to then-Director John Behan. Plaintiff was an "exempt" employee,[2] who was a "direct report" to the Director. Plaintiff, despite the title of "Executive Secretary", was not charged with clerical duties such as answering phones or typing. Rather, plaintiff acted as a "legislative liaison for the Director", managed the Director's correspondence, and ensured assignments the Director made to other staff members were completed. Behan frequently required plaintiff to communicate his wishes and work assignments to Division Public Information Officer Harvey McCagg. McCagg was plaintiff's co-worker, and also a "direct-report" to the Director. Since Behan had ongoing problems with McCagg's performance, McCagg saw plaintiff as the messenger of Director Behan's unpopular directives and developed a dislike toward plaintiff. Although plaintiff disliked McCagg's behavior toward her, because Director Behan understood the situation and had assured plaintiff she did not need to be concerned about McCagg and that he would handle him, she did not feel threatened at the time. McCagg testified that he and plaintiff had a "shared dislike" for each other.

In January 1999, defendant George Basher replaced Behan as the Director. Shortly thereafter, plaintiff, as a political appointee, offered to resign. According to plaintiff, Basher declined to accept her resignation, and indicated that he intended to modify plaintiff's job duties

---

[2] As an "exempt" employee under New York State law, plaintiff was not required to report the hours she worked, but only whether she was "present" or "absent" on a given day. Additionally, she was a salaried employee who, unlike "non-exempt" hourly employees, did not receive overtime pay regardless of the number of hours that she worked.

3

and increase her responsibility, telling her that he thought plaintiff's talents were being "wasted." Defendant Basher testified that in March 1999, plaintiff approached him and indicated that she wanted to be more than a secretary and that she needed to make more money. Plaintiff recollects their conversation differently. According to plaintiff, in February 1999, Basher offered her a promotion, a new title - - Special Projects Manager, and a raise. Basher testified that he told plaintiff there were advancement opportunities and that he does not recall responding to her request for a raise.

Plaintiff states that shortly after learning she was going to receive a new job title and a raise, she initiated a meeting with McCagg and told him that they needed to get past their personal differences and develop a constructive working relationship. During that meeting McCagg told plaintiff, "in substance" that he "would never work with a woman as my equal" and that plaintiff should start looking for a new job because he was going to work to undermine her. Plaintiff avers that she reported the substance of this conversation to Basher and that Basher assured her of her "important" role in the Division and that he would instruct McCagg to treat her as a professional. McCagg testified that he never said he would not work with a woman as his equal.

McCagg testified that in March or April 1999, he and plaintiff met with Basher to discuss their difficulty getting along. According to McCagg, Basher told them to "play[] nice in the sandbox".

According to plaintiff, despite Basher's assurances, McCagg worked to undermine her over the next few months in front of Basher and the office staff in a number of ways. Specifically, plaintiff testified that she saw or heard from others that McCagg mimicked

4

plaintiff's laugh, walk, and mannerisms in front of other employees. McCagg also complained to Basher that it was one of plaintiff's duties was to answer the Division's general phone line, and that she had been refusing to do so. Plaintiff testified that as a member of the "professional staff", she was not the receptionist and was required only to answer her direct line, not the general line – which did not even ring at her desk, and that the two employees who held non-exempt clerical positions were responsible for handling the telephones. Plaintiff stated that Basher told plaintiff that he did not expect her to be the public receptionist. Basher, on the other hand, testified that he told her that he "expected her to answer the phones" and to be "a team player."

Further, according to plaintiff, McCagg raised an issue with regard to her work schedule. Plaintiff states that she was authorized by the previous director to forgo lunch and leave at 4:00 p.m. to pick up her child up from day care. According to plaintiff, McCagg told Basher that her leaving early was creating a morale problem among the staff. Basher testified that when he confronted plaintiff about her schedule she responded "that that was the other people's problem, and if they wanted the same privileges she had, they could work on the same number of campaigns she worked on and do the same things she did."

On June 7, 1999, plaintiff informed Basher that she was pregnant. Plaintiff claims Basher had no response to her news. Basher testified that he offered plaintiff his congratulations. Plaintiff claims that in the months that followed her announcement, assignments were taken from her, she was no longer asked to attend meetings, and had nothing to do. Plaintiff testified that as a result, she read books and occasionally clipped coupons. There seems to be no dispute that plaintiff did little work during the summer of 1999. Plaintiff

avers that she told Basher she had "little to do each day" and that he responded that she "would soon be very busy with new projects".

According to plaintiff, in the early summer of 1999, McCagg stated to Director Basher that veterans had complained that it was inappropriate that the Division's representative was a female non-veteran. Upon learning from Basher of McCagg's complaint, plaintiff contacted one of the veterans' groups, and received assurance that they had no issue with plaintiff's role as the Division representative.

According to plaintiff, at some point, for there is no indication in the record when, plaintiff told Basher that she wanted to file a formal complaint against McCagg. Plaintiff also suggested that it might be best if she transferred to the Saratoga office to avoid McCagg's hostility. Plaintiff avers that Basher responded that he thought that was a good idea and that he would get back to her. Basher testified that plaintiff never asked to file a formal complaint against McCagg.

In an affidavit, plaintiff states that in mid-August, Basher informed her that it "might make sense" for her to transfer to another position in a different State agency. Basher testified that he indicated to plaintiff that he thought it was "time she moved on" because "she and I were obviously never going to resolve this set of differences that we had." Basher also told plaintiff that he had no trust of confidence in her. Plaintiff asserts that Basher told her he had "no problem with the quality of my work, but he was having a hard time finding jobs for a female non-veteran, and that [her] upcoming maternity leave would fall at the same time that his reorganization kicked in." Plaintiff claims that they agreed that she would consider other opportunities, but that if nothing appropriate turned up, she would continue with the Division.

Basher testified that sometime in the Spring of 1999, he concluded that it was not going to work out because plaintiff was unable to get along with the staff.  Consequently, he contacted the Governor's Office and requested that a position be found for her outside the Division.  Basher testified that plaintiff did not appear to know much about the Division and seemed more willing to respond to the political chain of command.

Plaintiff asserts that she was offered an interview for a job as a legal secretary at the New York State Department of Environmental Conservation, but she declined it as she was not a legal secretary and no training for such a job.

Plaintiff avers that she met with Basher again in early September and complained that McCagg was undermining her position. Plaintiff received Basher's assurance that he would handle the situation.

On September 29, 1999, Basher gave plaintiff a two-week termination notice.  According to plaintiff, Basher told her that he was terminating her employment because he could not handle the personality conflict between McCagg and plaintiff, "it's taken up way too much time and energy.  And, frankly, by the time I really need your talents and I really need you [sic] full attention, you're going to be on maternity leave.  And I really need all hands on deck in January."  Plaintiff states that Basher also indicated that he was "having a very difficult time finding work for a woman who is not a veteran."  Basher said he did not, however, have a problem with plaintiff's work.  Basher denies making any comments related to plaintiff being on maternity leave or saying that her termination had nothing to do with her performance.

Plaintiff immediately contacted "other state management officials."  Within two days, Basher and the Division's legal counsel informed her that she was not fired, but would be

reassigned to an office in Saratoga. Basher testified that he acceded to the request of Thomas Doherty from the Governor's Appointments Office that plaintiff's employment with the Division continue during her pregnancy, after which time Doherty would try to find another employment opportunity for plaintiff.

Plaintiff states that she received no work assignments in Saratoga, and did not have a desk, phone, chair, or access to a computer or a fax machine. Plaintiff "endured" this "humiliating" situation for several days until her obstetrician directed her to go out on disability leave because the stress of the situation was affecting her health as well as the health of her unborn child. Plaintiff remained out of work until the end of her maternity leave, March 2, 2000, when she was informed that her employment had been terminated. Defendants contend that on February 28, 2000, prior to her termination, plaintiff was offered a position with the State Ethics Commission. Plaintiff claims she was offered an interview, though there seems to be little evidentiary support for this claim, not a job, and that she would have had to take a $10,000 pay cut, so she refused. This action followed.

## II.     DISCUSSION

### A.     Standard for Summary Judgment

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence

establishing the existence of a disputed issue of material fact requiring a trial.  *See id*.  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See id*.

"Because direct evidence of ... discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted).  A plaintiff must, however, provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.  *Id.*

**B.     Hostile Work Place Discrimination**

Defendant seeks summary judgment dismissing plaintiff's claim that she suffered gender-based employment discrimination in that she was subjected to a hostile workplace.  To succeed on this claim plaintiff must establish "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).  With respect to the first factor, plaintiff must prove both objective and subjective elements, *i.e.*, that the conduct alleged is so severe and pervasive as to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993).  With respect to the second factor, "[w]here an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the

harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004).

      Plaintiff's deposition testimony and affidavit demonstrate that she perceived the work environment to be hostile and abusive based on defendant co-worker Harvey McCagg's behavior toward her. Thus, the issue here is whether the evidence would permit a jury to conclude that a reasonable person would perceive the environment to be hostile or abusive. On a summary judgment motion, the Court must consider the totality of the circumstances and evaluate the quantity, frequency, and severity of the incidents in order to obtain a realistic view of the work environment. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999). A workplace may be found to be hostile on the basis of gender "where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's gender." *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001); *accord Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998). Isolated, minor episodes of harassment do not, however, merit relief. *See Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997).

      Plaintiff bases her claim of hostile work environment on the cumulative effect of a number of factors and incidents, many of which are not overtly gender-related, but which she claims would not have occurred but for her gender. Through her affidavit and deposition testimony, plaintiff adduces evidence in support of the following assertions: Public Information Officer Harvey McCagg, was plaintiff's co-worker, and also a "direct-report" to the Director. Behan, the former director, frequently required plaintiff to communicate his wishes and work assignments to McCagg. Since Behan had ongoing problems with McCagg's performance,

McCagg saw plaintiff as the messenger of the former director's unpopular directives and developed a dislike toward plaintiff.

The discord between plaintiff and McCagg continued even after Basher became the director in January 1999. Plaintiff met with McCagg privately, and told him that they needed to get past their personal differences, and develop a constructive working relationship. During that meeting McCagg told plaintiff, "in substance" that he "would never work with a woman as my equal" and that plaintiff should start looking for a new job because he was going to work to undermine her. Plaintiff claims the events which followed were the fruition of McCagg's warning.

Over the next several months, McCagg worked to undermine plaintiff in front of Basher and the office staff by mimicking plaintiff's laugh, walk, and mannerisms in front of other employees; complaining to Basher that one of plaintiff's duties was to answer the phone, but that she refused to do so, when plaintiff, as a member of the "professional staff", was only required to answer her direct line. According to plaintiff, notwithstanding her status as a member of the "exempt professional staff" which excused her from the New York State time and reporting rules, McCagg stated to other office employees that it was unfair that plaintiff left the office at 4:00 p.m., when the other employees were required to stay until 5:00 p.m.. Finally, McCagg worked to take away plaintiff's professional duties in an effort to force her into the role of a "more traditional stenographer." For instance, McCagg took away plaintiff's assignment to prepare a new "record retention policy", and after plaintiff had been assigned to serve as a Division representative to various veterans' groups and attend meetings in that role, McCagg stated to Director Basher that veterans had complained that it was inappropriate that

11

the Division's representative was a female non-veteran. Upon learning of McCagg's statement to Basher, plaintiff contacted one of the veterans' groups, and received assurance that they had no issue with plaintiff's role as the Division representative.

Plaintiff asked Basher to oversee a meeting between herself and McCagg, but that Basher did not. Plaintiff told Director Basher that she wanted to file a formal complaint against McCagg. Plaintiff also suggested that she be transferred to the Division's Saratoga office, where she could avoid McCagg's hostility.

In mid-August 1999, Director Basher suggested that plaintiff should transfer to another position in a different State agency. In early September, plaintiff met with Director Basher and again complained that McCagg was undermining her position. Director Basher assured plaintiff that he would handle the situation with McCagg.

On September 29, 1999, Director Basher gave plaintiff a two week termination notice and told her that he was terminating her employment because of her personality conflict with McCagg, he was having difficulty finding work for a woman who was not a veteran, and when he needed her most, she would be out on maternity leave.

Although defendant McCagg denies much of the conduct alleged above, including plaintiff's assertion that he told her that he would never work with a woman as his equal, and that he said that the veterans' groups did not want to work with a female non-veteran, the Court, on summary judgment, must view the facts in the light most favorable to plaintiff. Thus, the Court finds, based on plaintiff's testimony regarding McCagg's warning that he would not work with a woman as an equal and that he would work to undermine her, and that the series of events which followed were the fruition of McCagg's efforts, there is sufficient evidence from

which a jury could find that plaintiff was subjected to conduct which was so severe and pervasive as to create an environment that a reasonable person would perceive to be hostile or abusive on the basis of gender. Finally, based on plaintiff's testimony that she repeatedly complained to Basher regarding McCagg's behavior, there is a basis for imputing McCagg's conduct to the Division. Accordingly defendants' motion for summary judgment on plaintiff's first cause of action is denied.

### C. Discrimination Based on Gender and Pregnancy

To evaluate plaintiff's Title VII claims against the Division, the Court applies the three-step, burden-shifting process articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The first step in the *McDonnell Douglas* formulation requires plaintiff to prove, by a preponderance of the evidence, a *prima facie* case of discrimination by the employer. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446-47 (2d Cir. 1999), *cert. denied* 120 S. Ct. 2688 (2000). To establish a *prima facie* case, plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The burden of establishing a *prima facie* case is not onerous, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); indeed, it has been described as "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

In discrimination cases, the only direct evidence available often centers on what the defendant allegedly said or did. "Since the defendant will rarely admit to having said or done

13

what is alleged, and since third-party witnesses are by no means always available, the issue frequently becomes one of assessing the credibility of the parties. At summary judgment, however, that issue is necessarily resolved in favor of the nonmovant." *Danzer v. Norden Systems, Inc.,* 151 F.3d 50, 57 (2d Cir. 1998).

Defendant argues that plaintiff is unable to establish either the second or fourth elements of a *prima facie* case of discrimination. According to defendant, plaintiff cannot establish that she was qualified for the position, nor can she establish that the termination of her employment occurred under circumstances giving rise to an inference of discrimination.

To satisfy the second element of the test, plaintiff need only demonstrate that she possessed the basic skills necessary for performance of the job. *See de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 20 (2d Cir. 1996). Plaintiff's testimony that she had performed the position for two years prior to defendant Basher's assumption of the Director's position, and that defendant Basher offered her a promotion and a raise shortly thereafter is sufficient to make a *prima facie* showing that she satisfactorily performed the duties of her position.

With respect to the fourth element, plaintiff has met her minimal burden of making a *prima facie* showing that the termination of her employment occurred under circumstances giving rise to an inference of discrimination. Plaintiff testified that when defendant Basher terminated her in September 1999, he told her that he was "having a very difficult time finding work for a woman who is not a veteran", that he could not handle the conflict between plaintiff and McCagg, and that by the time he really needed her "talents" and "full attention", plaintiff was "going to be on maternity leave and I really need all hands on deck in January." Further,

14

plaintiff stated that in Saratoga, she had no meaningful work to do, no desk, chair, phone, or computer, and that as a result of the stressful situation was forced, after several days, to go out on disability leave. Plaintiff's employment was eventually terminated effective March 2, 2000, the day she had planned to return from her maternity leave. In the view of the Court, plaintiff has met her minimal burden of establishing a *prima facie* case, thus shifting the burden to defendant to articulate a non-discriminatory reason for her termination.

In the second step of the *McDonnell Douglas* test, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Bickerstaff*, 196 F.3d at 446. The defendant's burden of production is not a demanding one; it need only offer an explanation for the employment decision. *See St. Mary's,* 509 U.S. at 507. Defendant here has met its burden by adducing evidence that defendant Basher terminated plaintiff's employment because she lacked knowledge about how veterans' programs worked, despite having been give the opportunity to learn, was unable to get along with most of the staff, was uncooperative, and had given defendant Basher no reason to trust her or have confidence in her.

The burden then shifts back to plaintiff in the third step of the *McDonnell Douglas* process, to demonstrate that the proffered reason was not the true reason for the employment decision, and that gender and pregnancy were. *See Bickerstaff*, 196 F.3d at 446. Plaintiff has stated that when Basher called her into his office to give her a two-week termination notice, he told her he was terminating her employment because of the personality conflict between plaintiff and McCagg, he was "having a very difficult time finding work for a woman who is not a veteran", and by the time he really needed her "talents" and "full attention", plaintiff was "going to be on maternity leave and I really need all hands on deck in January." Plaintiff

15

further stated that when she asked Basher whether he had a problem with her work, he responded that he did not and that her work was fine. If credited, plaintiff's testimony could establish that defendant Basher valued her talents but ultimately terminated her employment based on her gender and pregnancy. Accordingly, summary judgment is denied.

**D.     Retaliation**

To establish a *prima facie* case of retaliation, plaintiff must show (1) that she was engaged in a protected activity known to defendant, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). In the second step of the *McDonnell Douglas* process, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Bickerstaff*, 196 F.3d at 446. The third part of the *McDonnell Douglas* process requires plaintiff to demonstrate that her decision to engage in protected activity by complaining to Basher regarding employment discrimination – and not the reason proffered by the employer – was the true reason for the adverse employment decision. *Id*.

Here, plaintiff claims she complained to Basher about McCagg's activities and his statements that he "would never work with a woman as my equal" and that plaintiff should start looking for a new job because he was going to work to undermine her. Plaintiff also asked Basher to oversee a meeting between herself and McCagg and told Basher that she wanted to file a formal complaint against McCagg. Plaintiff again complained to Basher about McCagg's efforts to undermine her in early September. Basher informed plaintiff of his decision to terminate her employment on September 29, 1999, and ultimately terminated her employment,

16

after acceding to Doherty's request that he not terminate plaintiff's employment while she was pregnant, on March 2, 2000.  Based on these facts, plaintiff has sustained her burden of showing that she complained to her employer about sexual harassment or discrimination, her employment was terminated, and, given her repeated complaints about McCagg's behavior to Basher, the last of which was in early September, there is sufficient evidence from which to infer a causal connection between her complaints and her termination.

As discussed in section III.B., defendant has established a legitimate, non-discriminatory reason for her termination, accordingly, the burden returns to plaintiff to show retaliation was the real reason for her termination.  The evidence, when viewed in the light most favorable to plaintiff, is sufficient to satisfy plaintiff's burden.  Plaintiff asserts that one of the reasons Basher gave for her termination, was the personality conflict between plaintiff and McCagg, the individual about whose sexually discriminatory behavior she complained.  Further, McCagg testified at his deposition that he "may have shared" with Basher that the termination of plaintiff's employment "would create or it might establish a more harmonious relationship in the office".  A jury could therefore conclude that defendant terminated plaintiff's employment in retaliation for plaintiff's ongoing complaints about McCagg's allegedly sexually discriminatory behavior.  Accordingly, defendant's motion for summary judgment dismissing plaintiff's Title VII retaliation claims is denied.

    **E.**    **State Claims – Basher and McCagg**

Finally, defendant asserts that the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against Basher and McCagg because the state law regarding whether individual defendants can be held liable under § 296(6) of the HRL is

17

unsettled. The Second Circuit recently noted that although the state courts are not in unanimous agreement, "the majority of courts to have considered the issue have affirmed the existence of a cause of action against individual defendants under the aid-or-abet provision of the NYSHRL." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). In *Feingold,* the Second Circuit found personal liability for supervisors, as "employers" within the meaning of the HRL, and for co-workers who "actually participated in the conduct giving rise to a discrimination claim" even if that co-worker did not have authority to hire or fire the plaintiff. *Id*. at 157-58. Moreover, as discussed above, plaintiff has adduced sufficient evidence to show issues of material fact requiring trial regarding whether defendants Basher and McCagg discriminated against her based on her gender and retaliated against her for complaining about gender discrimination.[3] Accordingly, the Court declines to dismiss plaintiff's state law claims against Basher and McCagg.

IV.  **CONCLUSION**

For the foregoing reasons, it is hereby

ORDERED that Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATE:  September 20, 2005

Norman A. Mordue
U.S. District Judge

---

[3] The individual defendants did not, however, seek summary judgment dismissing plaintiff's state law causes of action based on the absence of material fact. Their argument focused on whether the Court should exercise supplemental jurisdiction over the state law causes of action. There is, in any event, as discussed above, sufficient evidence from which a jury could find defendants McCagg and Basher liable on plaintiff's state law discrimination and retaliation claims.